### GULF, C. & S. F. RY. CO. v. STATE.
### (No. 7244.)

Court of Civil Appeals of Texas. Austin. June 27, 1928.

Appellant's Motion for Rehearing Overruled Oct. 17, 1928. Appellee's Motion for Rehearing Granted Oct. 4, 1928.

Terry, Cavin & Mills, of Galveston, Chambers & Gillis, of Cameron, and F. J. & C. T. Duff, of Beaumont, for appellant.

A. J. Lewis and J. M. Ralston, both of Cameron, for appellee.

McCLENDON, C. J. Suit by the state, for itself and in behalf of Milam county and its taxing subdivisions, to recover state, county, and district taxes assessed against the railway company for the year 1926.

The railway company tendered and later paid all of the taxes except the difference between 40 and 50 per cent. of the intangibles and between 40 and 100 per cent. of the rolling stock assessments which had been apportioned to the county. The evidence showed without conflict that the commissioners' court as a board of equalization assessed all property in the county generally on the basis of 40 per cent. of the true value as found by the board; whereas, the intangibles were placed upon the rolls at 50 per cent. of their true value, and the rolling stock at 100 per cent. of its true value. The trial court's judgment which was in favor of the state is predicated upon a finding that the apparent overvaluation of the intangibles and rolling stock was more than offset by an undervaluation of the railway company's right of way. This finding is contested by the railway company on the ground that the evidence will not support it.

The issue thus joined is controlled by the holdings in Lively v. Ry., 102 Tex. 545, 120 S. W. 852, and Dreuesdow v. Baker (Tex. Com. App.) 229 S. W. 493. The record showing without conflict that the general standard adopted by the commissioners' court for valuing property throughout the county for taxation was 40 per cent. of its actual value, the railway company was entitled under these cases to have that standard applied to its intangibles and rolling stock, unless the case is brought within the ruling of the Druesdow decision, which is to the effect that where violation of the constitutional guaranties of equality in taxation "is based upon the ground that intangibles have, as compared to tangibles generally, been overassessed, and the countercharge is made that the tangibles of the complainants have, because of reliance upon a sworn statement filed by the complainant with the board assessing tangibles, been underassessed, it is proper to consider the action of both boards in determining the issue." The court further say:

"This the trial court did and as a result found that there had been no discrimination against the railway company and in favor of the taxpayers generally, and this finding we approve."

The controlling question in the present appeal is whether the evidence brings the case within this holding.

Briefly, the record shows that the railway company assessed its right of way at $10,000 per mile. The board of equalization raised this valuation to $11,000 per mile and issued notice of hearing. At this hearing the $11,000 valuation was left undisturbed. It was shown without contradiction that the board went thoroughly into the question of valuation. The following excerpts from the testimony of the county judge is a fair résumé of his testimony and that of the other members of the board of equalization who testified on the subject:

"I arrived at the conclusion that $11,000 a mile was a fair valuation through this county and still think so. The court decided that taxing the railroad on $11,000 would be putting a burden on them in proportion to what other individual taxpayers were paying on their realty; we wanted to put them on the same basis as property general. I think we did that."

The state offered the testimony of an engineer to the effect that the right of way was worth approximately $40,000 per mile. This figure was about $12,500 per mile in excess of the equalization board's value of $11,000 per mile on the 40 per cent. basis. The testimony of this witness, however, is based solely upon his estimate of replacement value, less depreciation. There is no hard and fast rule for determining the actual value of the right of way of a railway company, and in its last analysis such valuation is to a large extent a matter of opinion. The record conclusively shows that the board of equalization applied to the right of way the same standard that it applied to other property generally, and measured by that standard placed the valuation in accordance with its honest views. In the absence of some showing of mistake, accident, or fraud, it ought not to be permissible to go behind the finding of the equalization board, even in an equitable proceeding. The finding of the board of equalization partakes of the nature of a judicial ascertainment, and where its correctness is dependent solely upon the board's judgment of value from evidence, and information brought to its knowledge, its decisions are not subject to review. It is true in the present case the railway company is questioning the justness of the assessment upon its intangibles and rolling stock, upon the ground that the board of equalization in assessing property generally in the county applied a different standard from that applied to the assessment of its intangibles and rolling stock, and, as held in the Druesdow Case, the action of the equalization board in fixing the valuation upon other property of the complaining party is a proper subject of inquiry for the purpose of determining whether the net result of the entire assessment works an unjust discrimination against the complaining party. The opinions both of the Court of Civil Appeals (197 S. W. 1043) and Commission of Appeals (220 S. W. 493) in the Druesdow Case are somewhat meager in their statement of the facts in this regard. However, it appears from the opinion of the commission that the board took the assessment of the tangibles as made by the railway company, and that an undervaluation as compared with property generally in the county resulted "because of reliance upon a sworn statement filed by the complainant with the board assessing tangibles." The record before us

shows an entirely different state of facts. The board of equalization raised the assessment made by the railway company, and after a full hearing reached the conclusion that $11,000 per mile would be fair and just on the basis adopted by the board for assessing property generally throughout the county. The members of the board called upon to testify stated, not only that this was the basis upon which the assessment was made by them, but that they were still of the view that it was correctly made. There is no intimation of accident, mistake, or fraud. The fact that the judgment of the members of the board was not in accord with the estimate of the engineer based upon an arbitrary method of valuation, which the law does not recognize as controlling, was not sufficient to overturn the finding of the board; nor do we think that where valuation has been fixed as in this case after full hearing and upon a proper basis, the judgment of the court can be substituted for the judgment properly exercised of the board of equalization.

The trial court's judgment is reversed and judgment rendered for appellant.

Reversed and rendered.

### On Appellee's Motion for Rehearing.

In our original opinion we said:

"The board of equalization raised this valuation to $11,000 per mile and issued notice of hearing. At this hearing the $11,000 valuation was left undisturbed."

This statement is corrected so as to read:

"The board of equalization raised this valuation to $11,500 per mile and issued notice of hearing. At this hearing the valuation was finally placed at $11,000 per mile."

Appellee contends that the pleadings are not sufficient to raise the issue upon which our opinion was rested, in that there was no pleading by appellant to the effect that discrimination arose by reason of the basis of value in connection with appellant's intangibles and rolling stock. The contention in this regard is that the only attack on the assessment was that the commissioners' court had used a different basis in assessing appellant's property from that used in assessing other property in the county. There are five counts in appellant's answer, the first of which we think is broad enough to cover any character of discrimination. The language used is:

"That the plaintiff in this case is insisting and demanding that it (appellant) pay in proportion more than is charged or demanded of others owning similar property in the same territory or section of Milam county."

There was no exception directed to this allegation, in the absence of which we think it should be regarded as sufficient.

It was urged in the argument on the motion for rehearing that the case was not fully developed from the viewpoint of appellee, and further that the amount of taxes tendered and paid was less than the total tax due after deducting the difference between 40 and 50 per cent. of the intangibles and between 40 and 100 per cent. of the rolling stock. We are unable to tell from the record whether this latter contention is correct.

In view of these two contentions in the argument, we have concluded that the case should be remanded instead of finally disposed of in this court. Our former judgment is therefore set aside, the judgment of the trial court is reversed, and the cause remanded generally to that court for a new trial.

Motion granted.

Judgment reversed and remanded.

### On Appellant's Motion for Rehearing.

Appellant in its motion for rehearing questions the accuracy of the statement in our opinion on rehearing to the effect that we were unable to tell from the record whether the amount paid covered all the tax due except that involved in the difference between 40 per cent. and the basis of assessment on the intangibles and rolling stock.

It may be correct that the record presents the basis for making proper calculation. If we were not reversing the case on the other grounds stated in our opinion on rehearing, we would examine the record more carefully upon this issue. In this connection it may be noted that the amount which the trial court found to be still due was $3,051; whereas, the trial court found that the valuations above 40 per cent. of the rolling stock and intangibles only amounted to a gross tax of $1,166. We had before us these findings when we wrote the opinion on rehearing, and they seemed to accord with the statement in the argument by appellee's counsel pointed out in our opinion on rehearing. Since we are remanding the case generally on the other grounds stated in our opinion for rehearing, we will make no further examination of the record to determine the correctness of the trial court's above findings. The motion for rehearing is overruled.

Overruled.